# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**STRUCTURES USA, LLC**                                                 **PLAINTIFF**

**v.**                                       **No. 3:21-cv-458-BJB-LLK**

**CHM INDUSTRIES, INC.**                                           **DEFENDANT**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Structures USA, LLC sued to vacate an arbitrator's decision that it violated two contracts with CHM Industries, Inc. Complaint (DN 1). Structures said the award was invalid because it never agreed to arbitrate in the first place. Motion to Vacate (DN 3). Magistrate Judge Lanny King recommended that this Court, not the arbitrator, decide if an agreement to arbitrate was ever *formed* and if a material dispute of fact exists regarding whether Structures and CHM agreed to arbitrate. Report and Recommendation (DN 24) at 15, 19. After reviewing CHM's objections, the Court adopts Judge King's recommendations.

## I.

In April 2019, Structures entered into two purchase orders with CHM for construction parts and services. Complaint ¶ 8. Both parties subsequently alleged that the other had failed to perform according to their agreements. ¶¶ 20–30.

CHM sent Structures a demand that they arbitrate their dispute over the purchase orders, DN 3-5, which CHM said were governed by CHM's standard "Terms and Conditions," CHM Answer (DN 7) at 3. Those terms contained a provision requiring the parties to arbitrate any dispute arising from the contract. DN 8-1 at p. 5, ¶ 19 (standard terms). CHM alleged that Anthony DiSimone, acting as an authorized agent of Structures, signed CHM's Terms and Conditions and that Structures first learned about those terms when it received the purchase order agreements by mail. Motion to Confirm (DN 9) at 5–6. Structures denied that it ever agreed to CHM's Terms and Conditions or that the purchase order agreements ever incorporated those terms. Complaint ¶ 32. In addition to his questionable role with respect to these purchase orders, moreover, Structures alleged DiSimone also committed fraud, among other wrongs, by collaborating with CHM in a new venture that competed with Structures. ¶¶ 41–42.

Structures arbitrated the dispute "under protest," arguing that it never agreed to arbitrate. Structures Reply (DN 13) at 6. The arbitrator determined that (1) the contract called for the arbitrator to determine whether the parties had agreed to arbitrate; (2) the contracts included an arbitration provision; and (3) CHM could recover contract damages and legal fees. Arbitration Award (DN 7-1) at 5.

Structures moved to vacate the arbitrator's ruling. DN 3-1. CHM responded by moving to confirm the arbitrator's award. DN 7. The Court referred this case to Magistrate Judge Lanny King to prepare a Report and Recommendation regarding the dueling motions under 28 U.S.C. § 636(b)(1)(B). DN 20. Judge King's report concluded that: (1) Structures did not waive its rights by arbitrating under protest; (2) the arbitrator's determination of her own jurisdiction does not receive deference; (3) the Court should decide whether the parties agreed to arbitrate; and (4) that a material dispute of fact exists over whether the parties agreed to arbitrate. R&R at 7–13.

CHM objected to Judge King's conclusions that the question whether the parties agreed to arbitrate was for the Court and that Structures had adduced sufficient evidence establishing a genuine issue of material fact regarding the existence of the arbitration provision. Objections (DN 25) at 2, 8.

## II.

The Court reviews the objected-to portion of the Report and Recommendation *de novo*. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

**1. Gateway Question.** Who decides whether an *agreement to arbitrate* was *formed*—the arbitrator or a court?

The courts, according to the Federal Arbitration Act. The FAA, 9 U.S.C. § 1 *et seq.*, manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Parties may agree to arbitrate "not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019) (quotations omitted). But "the parties' agreement [must] d[o] so by clear and unmistakable evidence." *Id.* Any such "delegation" clause giving this authority to the arbitrator, if challenged, is severable from the rest of the agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). A plaintiff must specifically challenge the delegation clause itself in order for a party to come to court and challenge the arbitration of gateway issues. *Id.*

"But even where an agreement contains a so-called delegation provision, 'before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.'" *In re StockX Customer Data Sec. Breach Litig.*, 19

F.4th 873, 879–80 (6th Cir. 2021) (quoting *Henry Schein*, 139 S. Ct. at 530). The Supreme Court has repeatedly said that "the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'" *Rent-A-Center*, 561 U.S. at 88 n.2 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (articulating the issues a "court must resolve," which "always include whether the clause was agreed to, and may include when that agreement was formed").

These decisions draw a line between the validity or enforceability of a contract, on the one hand, and the formation or existence of a contract, on the other. *StockX*, 19 F.4th at 879–80. A delegation provision can render the former questions arbitrable and preclude judicial resolution. But questions about "the formation or existence of the contract containing the provision" are "'always' for courts to decide at the outset." *Id*. "Enforceability" of a contract covers questions like unconscionability, illegality, or fraud in the inducement.[1] Those issues would preclude the enforcement of a contract. "Validity" includes concerns such as infancy or mental capacity that can render a contract voidable.[2]

Issues of formation, on the other hand, go to whether the parties ever agreed to arbitrate in the first place. It covers issues like mutual assent, acceptance, and authority of an agent to enter a binding contract.[3] So if the formation of the contract itself is at issue, then a court must resolve that question. *StockX*, 19 F.4th at 79–80 (describing that two-step analysis). Indeed, the FAA itself authorizes courts to compel arbitration only "upon being satisfied that the making of the agreement for arbitration ... is not in issue." 9 U.S.C. § 4.

Structures maintains that it never agreed to CHM's Terms and Conditions, which includes the arbitration provision at issue. According to its Complaint (¶¶ 31–33, 41–44), Structures never agreed to the Terms and Conditions, didn't see the documents until a year later, and didn't authorize DiSimone to sign such an agreement. In other words, it never assented to arbitration. Motion to Vacate at 6.

---

[1] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (fraud in the inducement is arbitrable); *Buckeye Check Cashing*, 546 U.S. at 444, 449 (illegality goes to enforceability); *Rent-A-Center*, 561 U.S. at 72–73 (unconscionability goes to enforcement).

[2] *See StockX*, 19 F.4th at 883–84 (infancy goes to validity and is arbitrable).

[3] *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 843–44 (6th Cir. 2021) (employee denying that he ever received or signed an arbitration agreement is a formation issue for the court); *Moran v. Svete*, 366 F. App'x 624, 632 (6th Cir. 2010) (implying that "an agent without authority to bind his principal" raises a formation issue); *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986) ("fraud in factum, i.e., ineffective assent to the contract" goes to formation).

Mutual assent is a classic question of contract formation, not enforcement or validity.[4] CHM's objection argues that Structures is questioning the entire Terms and Conditions, which is not specific enough to challenge the arbitration clause. Objections at 8–9. But since Structures' challenge goes to the formation of the underlying contract, it does not have to specifically challenge the arbitration clause. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 400–02 (3d Cir. 2020). Even if a "delegation provision seems to be a valid agreement to arbitrate the existence" of the whole contract, a court, not an arbitrator, must decide challenges to the "formation or existence of the [entire] contract." *Id.* So the Court overrules CHM's objection and must decide whether a material dispute exists regarding the existence of an arbitration agreement.

**2. Material Dispute**. To decide whether the existence of an agreement to arbitrate is actually "in issue," courts use the summary-judgment standard. *See StockX*, 19 F.4th at 881. The party asserting the existence of a contract must first produce evidence, such as a signed agreement, that would support a reasonable jury's finding that a contract exists. *Id.* The party contesting the existence of a contract must then present specific facts that would allow a reasonable jury to conclude that no contract was formed. *Boykin*, 3 F.4th at 839 (citing FED. R. CIV. P. 56(a)).

CHM provided a declaration from DiSimone swearing that he signed CHM's Terms and Conditions on behalf of Structures. DN 8-1 at 1, 5–7. It also attached the agreement containing his signature. *Id.* Structures relies primarily on a declaration by its current president, Robert Smook, stating that he could not locate the Terms and Conditions and such terms had not been incorporated in prior dealings. Smook Declaration (DN 3-2) ¶¶ 13–16. CHM argues that because Smook became president after the alleged contract and was not present for its formation, he lacked personal knowledge. Objections at 2–3; *Ondo v. City of Cleveland*, 795 F.3d 597, 604–05 (6th Cir. 2015) (affidavits not based on admissible facts or personal knowledge must be struck or ignored). Judge Kings report concluded that Smook had personal knowledge regarding circumstantial evidence that was sufficient to create a genuine dispute. R&R at 15. Judge King is correct.

In *Boykin v. Family Dollar Stores*, the Sixth Circuit held that the parties materially disputed whether they entered an arbitration agreement because Boykin unequivocally denied signing such an agreement. 3 F.4th at 840–42. He claimed he never received information about it. *Id.* And his personnel record revealed no agreement, which provided "circumstantial evidence." *Id.*

Structures' position here is similar. Based on an investigation, Smook denied that Structures ever agreed to CHM's Terms and Conditions. Smook Dec. ¶¶ 25–26.

---

[4] *See Boykin*, 3 F.4th at 843–44 (6th Cir. 2021) (court decided whether employee ever assented to arbitration when he denied receiving or signing it); *Moran*, 366 F. App'x at 632 (implying that "an agent without authority to bind his principal" raises a formation issue).

According to his declaration, CHM never provided a copy of the Terms and Conditions during months-long contractual disputes before arbitration. ¶¶ 13–14. Structures first saw the Terms and Conditions allegedly signed in April 2019 when they received an arbitration demand in November 2020. ¶¶ 12–13. Additionally, Smook avers that a diligent search of the company's records and email accounts revealed "no trace" of CHM's Terms and Conditions. ¶¶ 14, 16. Smook clearly states that "no documentary evidence" exists indicating CHM's Terms and Conditions were "ever contemporaneously transmitted by CHM" to either Structures or DiSimone. ¶¶ 17–18. And Smook says that CHM's Terms and Conditions had never previously been incorporated in prior, unrelated projects between the two parties. ¶ 15.

Smook obviously has personal knowledge of these facts, even if the evidence only circumstantially supports the conclusion that no contract was formed. How else (absent a confession) is a company supposed to prove, long after the fact, that individuals lacking authority concocted an agreement? *See, e.g., United States v. King*, 898 F.3d 797, 806 (8th Cir. 2018) (nurse had personal knowledge of clinic's procedures, which provided important circumstantial evidence of the defendant's mental state). Similarly, Boykin's "circumstantial evidence" that his personnel record contained no arbitration agreement, along with a denial that he ever signed or received the agreement, sufficed to create a material dispute. *Boykin*, 3 F.4th at 840–42.

Such circumstantial evidence is likewise enough here. CHM claims DiSimone signed the agreement on Structures' behalf. But DiSimone was *working with CHM*, Structures' competitor and counterparty, by the time the arbitration began. Smook Dec. ¶¶ 23–24. Moreover, as Judge King's Recommendation points out, DiSimone never affirmatively stated when he signed the agreement or returned it to CHM, and CHM's president never said when he received the signed contract. R&R at 15 n.10. Structures has provided sufficient admissible evidence for a reasonable fact finder to conclude that the parties never reached an agreement.

But CHM now contends that evidence was discovered *after* the release of the Report and Recommendation that calls Smook's declaration into question. Objections at 4–5. But the evidence adduced by CHM—an email allegedly sent to Structures in July 2019 containing CHM's Terms and Conditions—does not sufficiently undermine Structures' evidence to eliminate any genuine issue of material fact. To undermine the existence of a material dispute, the evidence supporting it must be "so utterly discredited by the record that no reasonable jury" could have believed it. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Indeed, a document stating that Boykin had completed a training on arbitration did not make his denials "blatantly and demonstrably false." *Boykin*, 3 F.4th at 842 (quotation omitted). While the evidence submitted by CHM may indeed undermine some of the evidence adduced by Structures, it does not utterly discredit it. Instead, CHM's evidence goes to weight and credibility, a question for the trier of fact. Similarly, the level of detail provided

by Smook in his declarations, which CHM contends is insufficient, goes more to the weight of the evidence. Objections at 6 n.2. Neither complaint eliminates the genuine dispute of material fact.

### III.

The Court overrules CHM's objections and adopts the Magistrate Judge's Report and Recommendation (DN 24)—granting in part the Motion to Vacate (DN 3), denying in part the Motion to Vacate without prejudice (DN 3), and denying the Motion to Confirm without prejudice (DN 9).

What comes next? Some courts just vacate the arbitration award when the evidence is clear. *See, e.g., Town & Country Salida, Inc. v. Dealer Computer Servs., Inc.*, 521 F. App'x 470, 471, 475 (6th Cir. 2013); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 946 (1995) (affirming a vacatur on appeal). But given the material dispute, the Court and the parties must resolve this disputed question of fact by summary judgment, mediation, or a trial. *See, e.g., Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, No. 2:04-91, 2014 WL 37237 (M.D. Tenn. Jan. 3, 2014); *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 8:09-cv-2036, 2014 WL 12621205 (M.D. Fla. June 13, 2014). The Court asks the parties to review the issues raised in Judge King's R&R (at 15–18), confer on what steps should follow, identify mutually agreeable deadlines, and submit a status report to the Court in three weeks.

Benjamin Beaton, District Judge
United States District Court

March 24, 2022