UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STRUCTURES USA, LLC                                                                                    Plaintiff

v.                                                                                            No. 3:21-cv-458-BJB

CHM INDUSTRIES, INC.                                                            Defendant

### MEMORANDUM OPINION AND ORDER AWARDING FEES

Defendant CHM Industries, Inc., after defeating Plaintiff Structures USA's effort to vacate an arbitration award in CHM's favor, asked the Court for an award of attorneys' fees and costs. Motion for Attorneys' Fees (DN 75) at 1. The details of the parties' lengthy contract dispute are recounted in the findings of fact and conclusions of law that this Court issued following a bench trial. Opinion (DN 72) at 1. Structures objected that the fee-shifting provision of the parties' Terms and Conditions agreement doesn't apply, that even if it does CHM's fee request is premature, and that the amount of fees CHM has requested is unreasonable in any event. Structures Brief in Opposition (DN 80) at 2–8. Structures also faintly—and unpersuasively—objects to the portion of fees attributable to the parties' spoliation fight. *Id.* at 8–10.

After reviewing the contract, fee submissions, and relevant caselaw, the Court denies Structures' objections, grants CHM's motion, and awards the requested fees, costs, and prejudgment interest to CHM.

### TERMS AND CONDITIONS

Generally, under the so-called "American rule," litigants pay their own costs and attorneys' fees. *Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).[1] But here the parties departed from this baseline and provided for an award of attorneys' fees under circumstances set forth in Paragraph 7 of the Terms and Conditions:

> ATTORNEYS' FEES AND COLLECTION COSTS: If CHM is required to retain an attorney to collect balances due under this sale, or is

---

[1] A federal court sitting in diversity must apply state law to determine an attorney's entitlement to fees. *Heartland Materials, Inc. v. Warren Paving, Inc.*, 384 F. Supp. 3d 786, 796–97 (W.D. Ky. 2019). Whether Kentucky or Texas law applies here is not entirely clear but ultimately immaterial because the result would be the same under either State's law. Texas courts evaluating requests for attorneys' fees draw on the lodestar method and factors similar to those employed by Kentucky courts to evaluate reasonableness. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493–503 (Tex. 2019); *Boden v. Boden*, 268 S.W.2d 632, 633 (Ky. 1954) (described below).

1

> required to defend claims brought against it by [Structures] arising out of this sale, [Structures] shall be liable to CHM for all costs incurred in collecting balances due or defending such claims, including but not limited to the fees of any collection agency, reasonable attorneys' fees, and other expenses. [Structures] shall reimburse such costs to CHM within three (3) working days after demand by CHM.

Terms and Conditions (DN 1-3).

The ordinary meaning of this provision certainly seems to sweep in a lawsuit like this one: CHM fought to protect and collect contract damages awarded in arbitration in response to Structures' attempt to avoid paying. CHM was "required to retain an attorney," hasn't yet "collect[ed] balances due under this sale," had to "defend claims brought against it by [Structures]" that "ar[ose] out of this sale," and incurred "costs … in collecting balances due [and] defending such claims." *Id.*

Structures' opposition brief acknowledges that its request for a declaration included requests that this Court find "that CHM materially breached the Purchase Orders," "that Structures USA's obligation to make payment to CHM is excused," and "that Structures USA is entitled to offset its damages from amounts otherwise payable to CHM and/or is entitled to indemnification from CHM under the Purchase Orders for its damages." Brief in Opposition at 4 n.2 (quoting Complaint (DN 1) at 8-9). These are self-evidently claims against CHM that, if successful, would've entitled Structures to relief in some form. Structures nevertheless persists in contending that fee-shifting doesn't apply because the Court didn't reach these claims. *See id.* ("To the extent that" the aforementioned aspects of Structures' declaratory-judgment claim "is deemed to be a claim against CHM, this action has not and will not address such claim, and CHM has therefore not incurred fees in defending any such claim."). Jabberwocky! That CHM successfully defended these claims obviously doesn't mean they weren't claims in the first place.

Nor is CHM's plain reading of the contractual language an outlier in the law of American arbitration. As CHM notes, courts have held that litigation to confirm an arbitration award in federal court may be a "type of collection action" under a fee-shifting provision. *E.g., Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, 583 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) ("[C]ommon sense dictates that these arbitration-related proceedings," including an action to confirm the award, "should be considered a type of collection action.") (applying Florida law). Many others have treated attorneys' fees incurred in enforcing arbitration awards as costs of collection. *E.g., Trustees of New York City District Council of Carpenters Pension Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 466 (S.D.N.Y. 2022) (awarding fees to party forced to bring action to confirm arbitration award based on provision allowing fee-shifting in "collecting delinquencies"); *Trustees of Northeast Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Management Cooperation Funds v. Drywall & Acoustics of Northeast, Inc.*, No. 19-cv-4600, 2019 WL 5963689, at *3–4 (E.D.N.Y. Nov. 12, 2019) (similar); *Stifel, Nicolaus & Co., Inc. v. Harkness*, No. 17-cv-

222, 2017 WL 3670016, at *2 (E.D. Wis. Aug. 24, 2017) (awarding fees as a "cost of collection" in action to confirm arbitration award).

Structures cites no authority to the contrary. Instead, it has advanced two adventurous textual arguments, neither of which is persuasive.

*First*, Structures asserts that its own suit to vacate the arbitration award is not a "claim brought against [CHM] by [Structures USA]" under Paragraph 7. Brief in Opposition at 4. "[A]ll proceedings," according to Structures, "have been addressed to the parties' dispute concerning the enforceability of the Award and, more specifically, Structures USA's Motion to Vacate the Award under 9 U.S.C. § 10 and CHM's Motion to Confirm the Award under 9 U.S.C. § 9." *Id.* at 3 (citations omitted).

True, Structures did not assert affirmative claims, such as breach of contract, against CHM or seek money damages. *Id.* at 4. But the term "claim" is not limited to efforts to obtain money or property. A claim can be broadly defined as "the assertion of an existing right or a demand for a legal remedy to which one asserts a right." *Jones v. City of Cleveland*, No. 1:19-cv-01275, 2020 WL 3270706, at *6 (N.D. Ohio June 17, 2020); *see also Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" or "[a] demand for money, property, or a legal remedy to which one asserts a right."). Structures' request for a declaratory judgment was both an "assertion of an existing right" and a "demand for a legal remedy." It forced CHM to defend its own interests in the amount of contract damages awarded by the arbitrator—funds which Structures "assert[ed] a right" in.

*Second*, Structures advances a structural argument that the Agreement's arbitration provision, which includes a fee-shifting clause, (¶ 19) somehow limits the scope of the fee-shifting provision tailored to collection and defense (¶ 7).[2] No such inference is evident from reading the two provisions alongside one another. Paragraph 19 authorizes fee shifting in arbitration; Paragraph 7 does the same in litigation; neither seems markedly broader than the other. However hard the average reader squints, it's hard to make out much difference between a provision that calls out collection-agency fees but not expert witnesses (¶ 7) and one that calls out expert fees but not "other expenses" (¶ 19). Structures doesn't ground its construction in any caselaw or secondary source. The fairer inference is that drawn by CHM: Paragraph 19 "is further evidence that the parties anticipated that Paragraph 7 of

---

[2] Paragraph 19 reads in relevant part: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules …. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof …. The prevailing party in any arbitration shall be entitled to recovery of its reasonable expenses from the other party incurred in enforcing these Terms and Conditions including costs for attorneys' fees, expert witnesses, the arbitrators' fees and the administration costs of the American Arbitration Association."

3

the Terms and Conditions would apply to any collection efforts by CHM above and beyond those in the underlying arbitration action, including defenses against affirmative claims asserted by [Structures] (including its attempt to vacate, obtain sanctions, and obtain declaratory judgment)." Reply at 5.

Because CHM had to pursue this lawsuit to "collect balances due" by Structures, the fee-shifting provision of ¶ 7 applies regardless of any fee shifting sought and achieved under ¶ 19 related to the arbitration.

### REASONABLENESS OF FEES

CHM is requesting a total of $275,737.70 of attorneys' fees ($286,761.95 of total fees less $11,024.25 of excluded charges) for 639.4 hours of attorney time spread across more than two years of litigation, which culminated in a trial. Motion for Attorneys' Fees Proposed Order (DN 75-6) at 2; Brief in Opposition at 7. Structures argues that both the number of hours billed and the hourly rates charged by CHM's attorneys are unreasonable and that the Court should therefore reject CHM's requested fees. Brief in Opposition at 6–10.

Kentucky courts use the "lodestar" method as the starting point, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Heartland Materials*, 384 F. Supp. 3d at 797. Courts may evaluate the reasonableness of the fees or adjust the lodestar rate based on several factors, including: the "(1) amount and character of services rendered; (2) labor, time and trouble involved; (3) nature and importance of the litigation in which the services were rendered; ... (5) the amount of money or value of the property affected by the controversy; ... and (7) the results secured." *GATX Corp. v. Appalachian Fuels, LLC*, No. 9-41, 2011 WL 3104070, at *5 (E.D. Ky. July 8, 2011) (citing *Boden v. Boden*, 268 S.W.2d 632, 633 (Ky. 1954)).

The number of hours invested by CHM, though significant, is reasonable given the complexity of this litigation and the many subsidiary issues it included. Many and perhaps most of these issues are ones that Structures itself interjected into the case—aggressive and ultimately unsuccessful arguments that CHM had to rebut. Despite the fact that the parties had already litigated the underlying issues before the arbitrator, Structures initiated a lengthy and thorough discovery process in federal court. This ultimately involved approximately 900,000 documents and required extensive responsiveness review, privilege review, redactions, and production preparation by CHM's attorneys. Motion for Attorneys' Fees at 8–9. At least some of the legal and factual questions at issue, including motions for an adverse spoliation inference and a dispute concerning an improperly disclosed ink expert who ultimately didn't testify, Motion for Adverse Inference (DN 45), were complicated and required skilled legal analysis. The amount in controversy, moreover, was substantial: CHM achieved confirmation of an arbitration award of $591,130.15. Opinion at 14; Motion for Attorneys' Fees at 11. And obviously CHM secured a favorable result in the confirmation of its arbitration award—or else it wouldn't be

here claiming attorney fees. All of the factors cited by Kentucky courts in *Boden* and subsequent litigation point in favor of a substantial fee recovery for CHM.

In response, Structures again offers two unpersuasive counterarguments.

*First*, Structures asserts that the 639.4 hours billed by CHM's attorneys is unreasonably high. Brief in Opposition at 7. Structures attorneys, it notes by contrast, managed to bill only 486.1 hours throughout the duration of the litigation. *Id.* That difference, according to Structures, demonstrates that CHM overlawyered this case. Despite the ancillary issues discussed above, Structures views the litigation as straightforward and implicating no novel legal issues that required a complex legal strategy. *Id.* at 8. Structures also argues that the CHM legal team was inefficiently staffed, with too many partner-level attorneys billing time to the case. *Id.* at 7–8.

The Court disagrees that this case was straightforward. It involved testimony from multiple witnesses, a complicated Covid-interrupted timeline, fruitless searches for smoking-gun documents, allegations of forgery, efforts to introduce questionable ink-dating testimony, and spoliation questions. Structures cites no authority for the notion that a disparity in hours billed means the higher number is unreasonable. And CHM's surplus is easily explained in any event; its lawyers weren't performing the same tasks as counsel for Structures. Among other reasons, Structures forced CHM to incur a great deal of attorney fees responding to its discovery demands. Discovery occupied the attention of CHM's attorneys for the better part of five months, during which time they billed $72,894, even after CHM represented to Structures that the discovery requested would be complicated and costly. Motion for Attorneys' Fees at 9. Nor does CHM's attorney staffing seem duplicitous or unreasonable. To the contrary, CHM and its attorneys appear to have taken steps to account for staffing turnover during the lifecycle of this litigation by excluding $9,269 of fees billed by an associate who departed the firm early in the case. *Id.* at 7–8. As to the number of partner-level attorneys who worked on this matter for CHM, Structures doesn't identify any specific or blatant areas of overlap. Nor is any excessive duplication of work or needless overstaffing apparent on the face of the billing records. One instance of alleged duplicative billing, *see* Brief in Opposition at 7 (three partners devoting time to overlapping "procedural and scheduling matters") hardly proves significant duplicative billing resulting in unreasonable fees. Aside from a drive-by accusation of block billing (which appears limited at best based on the Court's review), Structures provides no further legal authority demanding such close scrutiny of individual time entries and staffing choices made by CHM and its lawyers.

*Second*, Structures argues that the rates charged CHM by those partner-level attorneys are unreasonable. *Id.* at 8. These lawyers charged between $435 and $525 per hour. *Id.* "In assessing the reasonableness of an hourly rate, a court should initially assess the prevailing market rate in the relevant community, which is, that rate which lawyers of comparable skill and experience can reasonably expect to

command within the venue of the court of record." *Honorable Order of Kentucky Colonels, Inc. v. Kentucky Colonels International*, No. 3:20-cv-132, 2023 WL 7545041, at *1 (W.D. Ky. Nov. 13, 2023) (quotation marks omitted).

CHM points to older caselaw in this district approving as reasonable a range of rates extending up to $390 for experienced attorneys. Motion for Attorneys' Fees at 6 (citing *KSA Enterprises, Inc. v. Branch Banking & Trust Co.*, No. 5:14-cv-182, 2019 WL 4060870, at * 3 (W.D. Ky. Aug. 28, 2019)). With inflation, CHM contends its rates are reasonably tethered to that range. More recent support comes somewhat closer to the mark: *Kentucky Colonels* found that $495 per hour for an experienced attorney was a reasonable rate. 2023 WL 7545041, at *3. In doing so, the court relied on a local market report conducted by PriceWaterhouseCoopers, which found that the "Price Report Average" for attorneys "of similar experience levels" to a partner practicing in the Western District of Kentucky was $646. *Id.* Given this benchmark, the Court approved a range of hourly rates extending as high as $495 for a senior partner.

The rates charged by CHM's attorneys are commensurate with the rate found reasonable in *Kentucky Colonels*. Although this precedent isn't necessarily on all fours with the staffing and experience of the lawyers in this case, in total it supports rather than undermines CHM's fee request. Structures, by contrast, points to nothing quantitative or qualitative in the record that would contradict the information provided by CHM. So Structures has not overcome the evidence supporting CHM's fees, which appear reasonable based on the information available to the Court.

### EXCLUDING FEES INCURRED IN DEFENDING THE SPOLIATION MOTION

Structures next tries to peel off the portion of fees attributable to the spoliation motion it filed, which it calculates as $18,497.50. *See* Smith Declaration at 2; Brief in Opposition at 8–10. This objection essentially attempts to re-litigate the spoliation question, asserting that the Court didn't apply the correct legal standard in evaluating CHM's culpability in the loss of the physical copies of the terms and conditions. *Id.* at 9–10 ("Even if it declined to impose a mandatory adverse inference, the Court should have granted Structures USA's motion, which underscores the unfairness of shifting CHM's fees on this issue to Structures USA.").

The Court will not recapitulate the spoliation analysis here after having extensively analyzed the issue in the post-trial order. *See* Opinion at 3–6. Structures' argument for excluding the fees incurred in defending the spoliation motion rests on the fact that CHM's conduct was negligent, which it contends should have been sufficient for the Court to find an adverse inference of spoliation. Brief in Opposition at 9–10. But the Court has already held that CHM's conduct was "at most reckless." Opinion at 5. And more to the point, Structures hasn't cited any legal authority for the proposition that a court should exclude attorneys' fees for motions that were incorrectly decided or close calls.

## COSTS

CHM requests a total of $3,185.70 in court and witness costs. Proposed Order at 2. These costs appear to be reasonable and Structures' only objection is that CHM has not proved that it actually paid the costs incurred so as to be eligible to be reimbursed under the language of Paragraph 7 of the terms and conditions. Brief in Opposition at 6. CHM's attorney, Lochlin Samples, submitted an unrebutted declaration to the Court confirming that CHM has paid all costs and fees except for a minimal remaining balance. Declaration (DN 81-1) ¶ 4. Because Structures points to nothing that might undermine the record evidence indicating that CHM has already paid, the Court awards the requested costs to CHM.[3]

## PREJUDGMENT INTEREST

The parties stipulated to prejudgment interest on the arbitration award in the amount of $80.98 per day, for a total of $68,425.34 through October 31, 2023. Proposed Agreed Order (DN 73) ¶ 2. Structures did not object to the award or the calculation, so the Court grants the requested interest at the agreed total.

## ORDER

The Court grants the motion for attorneys' fees (DN 75) and awards CHM $275,737.60 in fees, $3,185.70 in costs, and $68,425.34 in prejudgment interest (at the rate unopposed by Structures (DN 73 ¶ 2)). Should any of these figures need to be altered or updated based on changed circumstances, counsel should confer in good faith and update the Court within 21 days of any remaining concerns or disputes.

Benjamin Beaton, District Judge
United States District Court

August 20, 2024

---

[3] Structures did not object to CHM's request for pro hac vice fees. So the Court grants CHM's request as unopposed without considering whether such fees would've been appropriately taxed had Structures not forfeited its objection. *See Maxwell Brothers Lumber Co., LLC v. Veneer Services, LLC*, No. 4:18-cv-182, Bill of Costs (DN 101) at 2, (W.D. Ky. May 15, 2024) (declining to award pro hac vice fees as costs). Similarly, Structures did not object to CHM's request for the Court to award travel expenses as costs, so the Court grants CHM's request as unopposed.